UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PATRICIA CASALE, | : |
| Plaintiff, | : Civ. No. 06-615 (GEB) |
| v. | : |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | : **MEMORANDUM OPINION** |
| Defendant. | : |

**Brown, Chief Judge**

This matter comes before the Court upon the appeal of plaintiff Patricia Casale ("Plaintiff" or "Casale") from the Commissioner of Social Security Administration's ("Defendant" or "Commissioner") final decision that Plaintiff was not entitled to a period of disability or disability insurance benefits under Sections 216(i) and 223 of the Social Security Act ("the Act"). This Court, exercising jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78, will deny Plaintiff's appeal.

**I.      Background**

On March 22, 2004, Plaintiff filed an application for a period of disability and disability insurance benefits under Sections 216(i) and 223 of the Act, alleging disability as of December 31, 1988. (R. at 38.) On or about July 8, 2004, the Social Security Administration ("SSA") denied Plaintiff's claims. (R. at 21.) After filing a timely request for reconsideration, Plaintiff's claim was again denied on September 21, 2004. (R. at 27-29.) On October 15, 2004, Plaintiff

filed a Request for Hearing by an Administrative Law Judge ("ALJ"). (R. at 30.) On July 11, 2005, ALJ Mark G. Barrett conducted a hearing to determine whether plaintiff was disabled and thus entitled to benefits. (R. at 12.)

### A. The Hearing

At the hearing, the ALJ was presented with evidence (including testimony from Plaintiff herself) relating to Plaintiff's impairment: scoliosis with lumbar-thoracic fusion. Plaintiff testified that she was fifty-one years old, married, and had completed two years of college at Prairie State College, leaving without an associate's degree (R. at 256, 258.)

Plaintiff further testified that she was employed for 10 years as an assistant manager of a claims department for a Chapter 13 Bankruptcy Trustee, before leaving in 1983. (R. at 259-65.) Plaintiff added that she stopped working at that time because she got married and was experiencing lingering effects from her 1979 surgery for scoliosis. (R. at 265.) Plaintiff further testified that she could have continued to perform her job if she had been permitted to do so from home. (R. at 14.) Plaintiff stated that she had been taking Percocet after her surgery, and that she continued doing so longer than her doctor had anticipated. (*Id.*) As a result, she experienced withdrawal symptoms once the prescription ended. (R. at 265.)

Plaintiff testified that she began working for Toys R Us in 1995, but had to abandon the job after two days as a result of the pain she was enduring. (R. at 269.) Shortly thereafter, Plaintiff started working as a telemarketer for National Finance, but had to leave the position after three to four weeks. (R. at 269-70.) Plaintiff testified that she has not been employed since, and has not received any other earnings "off the books." (R. at 270.)

2

Plaintiff explained to the ALJ that she suffered from pain in her left leg due to her 1979 surgery. (R. at 271-72.) Plaintiff testified that she was only able to walk up to three blocks at a time in 1988. (R. at 272.) Plaintiff submitted to the court that she had difficulty standing for more than fifteen minutes at a time. (*Id.*) Plaintiff further testified that she was unable to bend down to pick objects off the ground, but that she was able to kneel down and squat. (R. at 272-73.) Plaintiff also contended that in order to perform the surgery for her scoliosis, the doctors had to remove part of her right hip, (R. at 276), and that she still suffers as a result of that operation. (*Id.*) Plaintiff testified that she was using only over-the-counter medicine, including Advil, Tylenol, and Anacin. (*Id.*)

Plaintiff further testified that she had received no treatment for her condition between 1979 and 1996. (R. at 278.) According to Plaintiff, Dr. Michael F. Schafer of Northwestern Memorial Hospital in Chicago, Illinois was the only doctor that she consulted regarding her back during that period. (*Id.*) Plaintiff claims that Dr. Schafer did not identify any back problems. (*Id.*) Plaintiff further stated that she gave birth to three children from 1983 to 1994, and moved residence six times. (R. at 266-82.) Plaintiff conceded that she was able to play with her children during that time. (R. at 274-75.)

Under direct examination by her own attorney, Plaintiff stated that she began experiencing significant amounts of pain shortly after giving birth to her daughter in 1985, and that the pain worsened progressively until 1988. (R. at 283-85.) According to Plaintiff, the pain in her lower back and in her left leg prevented her from performing her daily activities. (R. at 285-86.) Indeed, Plaintiff testified that the commute to work became too difficult as a result of

3

her physical limitations. (R. at 283.)

### B. The ALJ Decision and the Objective Medical Evidence Considered

On September 21, 2005, the ALJ held that Plaintiff had failed to establish that she was disabled within the meaning of the Act. (R. at 12-17.) The ALJ evaluated the evidence pursuant to the five-step process set forth in 20 C.F.R. § 404.1520, and determined that Plaintiff:

(i) had not performed any substantial gainful activity since 1983;

(ii) had impairments which were severe within the meaning of the regulations; and

(iii) did not have impairments that met or were equal to one of the listed impairments.

(R. at 13-16.)

The ALJ found that Plaintiff retained the residual functional capacity to perform her past relevant work as an assistant manager for the claims department of a Chapter 13 Bankruptcy Trustee, in the manner in which she performed that job prior to December 31, 1988. (R. at 16.) The ALJ therefore concluded that Plaintiff was not disabled under the Act at any time through December 31, 1988 – the date on which she was last insured for a period of disability and disability insurance benefits. (*Id.*)

## II. Discussion

### A. Standards of Review

#### 1. Reviewing the Commissioner's Decision

The Commissioner's decisions as to questions of fact are conclusive before a reviewing court if they are supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "Substantial evidence" means "more than a mere scintilla.

It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001).

The Third Circuit has made it clear "that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The ALJ must analyze all of the evidence and explain the weight he has given to probative exhibits. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (internal citations omitted). As the Third Circuit has held, access to the ALJ's reasoning is indeed essential to a meaningful court review. *Fargnoli*, 247 F.3d at 42. Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

       **2.**     **Awarding Benefits**

A plaintiff may not receive benefits under the Act unless he or she first meets certain statutory requirements. As a threshold matter, the plaintiff must be disabled, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42

U.S.C. § 423(d)(1)(A).  An individual is not disabled unless:

> [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A).

Regulations promulgated under the Act establish a five-step process for an ALJ's evaluation of a claimant's disability.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If she is, the application for disability benefits is automatically denied.  20 C.F.R. § 404.1520(b).  Second, if the claimant is not employed, the ALJ must assess whether the claimant has a severe impairment or "combination of impairments."  20 C.F.R. § 404.1520(a)(4)(ii).  A claimant who does not have a severe impairment is not disabled.  *Id.* Third, if the impairment is found to be severe, the ALJ must determine whether the impairment meets or is equal to those impairments listed in Appendix 1 to the regulations ("the Listing").  20 C.F.R. § 404.1520(a)(4)(iii).  If it does meet or equal those impairments, the claimant is conclusively presumed to be disabled and the evaluation ends.  *Id.*; 20 C.F.R. § 404.1520(d).

If, on the other hand, it is determined that the impairment does not meet or equal a listed impairment, the ALJ must proceed to step four, which requires a determination of:

> (i) the claimant's capabilities despite limitations imposed by an impairment (the claimant's RFC); and
>
> (ii) whether those limitations prevent the claimant from returning to work

6

performed in the past ("past relevant work").

20 C.F.R. § 404.1520(a)(4)(iv).

If the claimant is found capable of performing her previous work, the claimant is not disabled. *Id.* If the claimant is no longer able to perform her prior line of work, the evaluation must continue to the last step. The fifth step requires a determination of whether the claimant is capable of adjusting to other work available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ must consider the RFC assessment, together with the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(g). Thus, entitlement to benefits turns on a finding that the claimant is incapable, because of her impairments, of performing her past work or some other work in the national economy. *Id.*

The application of these standards involves shifting burdens of proof. The claimant has the burden of demonstrating both steps one and two, i.e., an absence of present employment and the existence of a medically severe impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant is unable to meet this burden, the process ends and the claimant does not receive benefits. *Id.* If, however, the claimant does meet her burden of proof and demonstrates that the impairments meet or equal those within the Listing, the claimant is automatically entitled to benefits. *Id.* If the claimant is not conclusively disabled under the criteria set for the Listing, step three is not satisfied, and the claimant must prove "at step four that the impairment prevents [her] from performing [her] past work." *Id.* Thus, it is the claimant's duty to offer evidence of the physical and mental demands of past work and explain why she is unable to perform such work. If the claimant meets this burden, the burden of proof then shifts to the Commissioner to

show, at step five, that the "claimant is able to perform work available in the national economy." *Id.* The step five analysis "can be quite fact specific . . . ." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 126 (3d Cir. 2000).

### B.     The ALJ's Decision was Based Upon Substantial Evidence in the Record

Plaintiff makes three arguments in challenging the ALJ's decision. First, Plaintiff claims that the ALJ erred in concluding that claimant's medical condition does not meet or equal the criterion of impairments listed in 20 C.F.R., Part 404, subpart P, Appendix I. Second, Plaintiff claims the ALJ erred in his analysis of claimant's testimony concerning her pain. Finally, Plaintiff claims that the ALJ's decision is ambiguous with respect to the weight given to a June 2004 report by Dr. Rashel Potashnick.

#### 1.     Medical Condition Does not Meet or Equal Criterion of Impairments

Plaintiff challenges the ALJ's conclusion that her medical condition did not satisfy any of the criteria under the third step of the evaluation process. (Pl.'s Br. at 2.) Specifically, Plaintiff disagrees with the Judge's finding that her impairment was insufficient to establish the requisite severity level under § 1.04 of the Listing set forth at 20 C.F.R., Part 404, subpart P, Appendix 1. Plaintiff submits that she does, in fact, meet the following impairment in Listing 1.04C:

> Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

(*Id.*) Plaintiff contends that she is unable to "ambulate effectively" according to section 1.00B2b, which defines the inability to ambulate effectively as a condition causing "extreme limitation of the ability to walk" that "interferes very seriously with the individual's ability to independently

initiate, sustain, or complete activities." (*Id.*)  While Plaintiff acknowledges that her condition is technically termed "scoliosis" rather than "stenosis," she maintains that the analysis should focus on the individual's resulting loss of function rather than on the terminology used. (*Id.* at 3.) Plaintiff claims that "scoliosis" and "stenosis" are medically equivalent for the purposes of this evaluation if the "severity and duration" criteria of 20 C.F.R. § 404.1526 are satisfied.  (*Id.*)

The Court finds that there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's impairments did not meet or equal the severity of any disabilities in § 1.04 of the Listing prior to December 31, 1988.  Plaintiff has not provided the requisite medical evidence to show that her impairment, scoliosis, was equal in severity to all of the criteria for the most similar listed impairment, lumbar spinal stenosis.  *Sullivan v. Zebley*, 493 U.S. 521, 530-531 (1990) (requiring specific medical findings to prove equivalence.)  As acknowledged by the Plaintiff, stenosis must result in the inability to ambulate effectively.  However, the inability to ambulate effectively also requires "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities . . . ." 20 C.F.R., Part 404, subpart P, Appendix I, § 1.00B2b(1).

There is insufficient evidence to establish that Plaintiff met the burden of proving an inability to ambulate effectively.  There is no medical evidence in the record for the period between Plaintiff's surgery in 1979 and her April 30, 1996 visit to Dr. Schafer.  Dr. Schafer did not report at the time that Plaintiff had any difficulty walking.  (R. at 140-41.)  Further, on February 13, 2004, Dr. Barbara Winfield, practicing in Runnemede, New Jersey, filled out an

9

Examination Report specifically noting that plaintiff was ambulatory and used no assistive device. (R. at 166.) Thus, the ALJ's finding that Plaintiff was able to ambulate effectively is supported by the record.

### 2. The ALJ Did Not Err in Finding that Plaintiff's Testimony was Unpersuasive

Plaintiff claims that the ALJ erred in finding Plaintiff's testimony unpersuasive. (Pl.'s Br. at 3-4, 6.) First, Plaintiff argues that the ALJ incorrectly concluded that she stopped working in 1983 due to "marriage and commuting problems." (*Id.* at 3.) Plaintiff claims that she explained to the ALJ that she was experiencing physical problems when she left work in January 1983, and that these problems were one of the reasons why she chose to get married. (*Id.* at 4.) Plaintiff asserts that these physical problems – including pain, difficulty walking, inability to stand for more than 15 minutes and inability to lift objects from the ground – prevented her from continuing her employment. (*Id.*) Plaintiff also submits that she testified before the ALJ that she was taking a morphine compound for her pain while she was working, and that this testimony should have been taken into account by the ALJ in assessing equivalency. (*Id.* at 5.)

Second, Plaintiff claims that the ALJ erred in concluding that her disability did not begin prior to the expiration of her insurance in 1988. In support of her position, Plaintiff provided a letter from Dr. Schafer indicating that, in his opinion, Plaintiff's pain began prior to 1988. While Plaintiff concedes that the letter alone is not sufficient to establish that she was indeed experiencing pain at the time she argues that it satisfies the third step of the evaluation process, when viewed in conjunction with her testimony before the ALJ. (*Id.* at 6.)

Third, Plaintiff claims that the ALJ did not give sufficient consideration to the criteria of

10

SSR 96-7p in assessing her restrictions. (*Id.*) Plaintiff argues that since there was insufficient objective medical evidence, the ALJ should have placed more emphasis on Plaintiff's testimony in determining her functional limitations. (*Id.*) Plaintiff submits that the ALJ did not set forth specific reasons for discrediting her testimony, as required by *Varney v. Secretary of HHS*, 859 F.2d 1396, 1398 (9th Cir. 1988), and that his analysis was therefore insufficient. (Pl.'s Br. at 7-8.)

The Court finds that the ALJ properly considered the credibility of Plaintiff's subjective complaints. The ALJ specifically noted Plaintiff's testimony and concluded that the Plaintiff's reported restrictions were not persuasive when considered in conjunction with the totality of the medical evidence in the record. (R. at 14.) Since subjective symptoms alone are not adequate for a finding of disability, the ALJ did not err in holding Plaintiff responsible for providing medical evidence to support her testimony. (*Id.*); *see also Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999) (finding that the adjudicator is not required to give significant weight to subjective testimony as long as the adjudicator's position is supported by evidence and clearly articulated in the decision); *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (holding that under 20 C.F.R. § 404.1529, allegations of pain and other subjective symptoms must be supported by objective medical evidence).

In the case at bar, the ALJ clearly articulated that there was insufficient medical evidence in the record to find that Plaintiff had such extensive functional limitations prior to December 31, 1988 that she was unable to work on a sustained basis for a period of 12 continuous months. (R. at 14.) That conclusion is supported by the record, which establishes (i) that Plaintiff did not

suffer any post-operative complications after her 1979 surgery, and (ii) that Plaintiff's condition is not reflected in any medical record until her April 30, 1996 visit to Dr. Schafer, well after the expiration of her insurance. (R. at 140-41, 200-06.)

Moreover, the ALJ did not err in holding that Plaintiff left her employment for reasons other than her disability. Plaintiff specifically stated in her Statement of Claimant that she stopped working "for reasons other than disability in 1983," despite claiming pain dating back to the 1979 surgery. (R. at 75.) In addition, Plaintiff testified before the ALJ that the difficulty in commuting to her place of employment was one of the reasons why she left her job. (R. at 283.) While Plaintiff may have had a number of different reasons for ending her employment, the ALJ did not err by relying on Plaintiff's statements in denying her the benefits she seeks.

### 3. The ALJ's Decision is not Ambiguous with Respect to Dr. Potashnick's Report

Plaintiff claims that the ALJ erred by failing to rely on a June 2004 report by Dr. Rashel Potashnick, whom Plaintiff visited for a consultative examination. (Pl.'s Br. at 8.) Plaintiff contends that the evaluation suggests that claimant is an individual with severe restrictions. (*Id.*) Plaintiff argues that the ALJ failed to take Dr. Potashnick's impression of Plaintiff's disability into consideration in reaching his decision. (*Id.*)

The Court finds that the ALJ sufficiently reviewed and explained the relevance of Dr. Potashnick's June 2004 report. Dr. Potashnick's report focused on Plaintiff's current pain and medical condition, but did not purport to address Plaintiff's condition prior to December 31, 1988. (R. at 183-85.) The report does not therefore contradict the ALJ's finding that Plaintiff was not under a disability, as defined by the Act. Since the ALJ found that Plaintiff was not

under a disability prior to December 31, 1988, there was no need to determine the exact date when Plaintiff eventually reached that status.

### 4.     Dr. Schafer's Report Does not Alter the ALJ's Decision

Plaintiff has also submitted an undated report by Dr. Schafer along with her challenge of the ALJ's decision.  In reference to late submissions, 42 U.S.C. § 405(g) provides that:

> The court may . . .  at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

402 U.S.C. § 405(g). Therefore, Plaintiff must show (i) that Dr. Schafer's report is new, (ii) that it is material, and (iii) that there is good cause for not having produced the report earlier.  While the report could be considered new evidence in the record, Plaintiff has failed to establish that the other two elements are met.

Materiality requires that the evidence "relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Newhouse v. Heckler*, 753 F.2d 283, 287 (3d Cir. 1985).  Additionally, there must be a reasonable probability that the new evidence would have changed the outcome of the original decision.  *Id.*

Here, Dr. Schafer's report briefly mentions that he finds Plaintiff's complaints about her pain credible, but it offers no further analysis and fails to offer any specific facts to support a finding of disability under the Act.  It is therefore not "material" under the Act.

Moreover, Plaintiff has failed to show good cause for not submitting this report prior to the ALJ's decision.  Plaintiff last saw Dr. Schafer on April 30, 1996, and has not provided any

13

reason for waiting until this juncture to submit a new report to the Court. (R. at 135-43.) Plaintiff has failed to meet the Section 405 requirements for allowing the introduction of new evidence before the Court, and Dr. Schafer's report will therefore not be relied upon in deciding whether to overturn the ALJ's decision.

### III.  Conclusion

For the reasons stated herein, Plaintiff's appeal is denied. An appropriate form of Order accompanies this Memorandum Opinion.

Dated: July 27, 2007

                                                       s/ Garrett E. Brown, Jr.
                                                 GARRETT E. BROWN, JR., U.S.D.J.